IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03037-CBS

NICK RAUL MEDINA,
     Plaintiff,
v.

P.O. JULIE DAVID, and
P.O. GENIE CANNAHAN,
     Defendants.
_____

MEMORANDUM OPINION AND ORDER
_____

Magistrate Judge Craig B. Shaffer

     This civil action comes before the court on: (1) Defendants' "Motion to Dismiss or Alternatively for Summary Judgment," and (2) Mr. Medina's "Motion of Appeal of [A]cceptance Re: 42 U.S.C. § 1983 Civil Complaint."  The case was directly assigned to this Magistrate Judge pursuant to 28 U.S.C. § 636(c) and D.C. COLO. LCivR 72.2.  (*See* Order of Reference Pursuant to 28 U.S.C. § 636(c) (Doc. # 45)).  The court has reviewed the Motion, Mr. Medina's Response (filed June 25, 2015) (Doc. # 46), Defendants' Reply (filed July 28, 2015) (Doc. # 51), the pleadings, the exhibits and affidavits, the entire case file, and the applicable law, and is sufficiently advised in the premises.

I.    Statement of the Case

     Mr. Medina is currently incarcerated at the Arkansas Valley Correctional Facility ("AVCF") of the Colorado Department of Corrections ("CDOC") in Ordway, Colorado.  At the time of the filing of this civil action, he was incarcerated at the Sterling Correctional Facility ("SCF") of the CDOC in Sterling, Colorado.  Mr. Medina commenced this case *in forma pauperis* and in his *pro se* capacity on November 10, 2014.  (*See* Prisoner Complaint (Doc. # 1), Prisoner's Motion and

Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 (Doc. # 16), "Order Granting Leave to Proceed Pursuant to 28 U.S.C. § 1915" (Doc. # 18)).  At the court's direction, Mr. Medina filed amended pleadings on November 24, 2014 and February 6, 2015.  (*See* Orders (Docs. # 4, # 11, # 14), amended pleadings (Docs. # 10, # 12, # 15)).  On March 16, 2015, the court entered an order dismissing Defendant Denver Parole Office and Claim Two, and finding Claim Three to be merely "a restatement of the allegations he asserts in Claim One."  (*See* "Order to Dismiss in Part and to Draw in Part" (Doc. # 20)).  The court ordered that "the only claims that remain involve visitation, disrobing, denial of association, and unnecessary force, which are properly addressed as a violation of Plaintiff's Fourth Amendment rights."  (*See id.*, Second Amended Complaint ("SAC") (Doc. # 15)).  Mr. Medina seeks as relief that Defendants "be relieved of their position" and that he be "financial[ly] compensate[ed]."  (*See* Doc. # 15 at 9 of 9).

II.    Standard of Review

Defendant moves to dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Defendant's assertion of Eleventh Amendment immunity constitutes a challenge to the allegations of subject matter jurisdiction in the SAC.  *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) ("an assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court");  *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) ("Once effectively asserted [Eleventh Amendment] immunity constitutes a bar to the exercise of federal subject matter jurisdiction.") (original emphasis omitted)).  As the party asserting jurisdiction, Mr. Medina bears the burden of establishing that this court has jurisdiction to hear his claims.  *See Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) ("Mere conclusory allegations of jurisdiction are not enough; the party

pleading jurisdiction must allege in his pleading the facts essential to show jurisdiction.")

(internal quotation marks and citations omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted."

> In reviewing a motion to dismiss, this court must look for plausibility in the complaint.   Under this standard, a complaint must include enough facts to state a claim to relief that is plausible on its face.  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (internal

quotation marks and citations omitted).  The burden is on the plaintiff to frame "a complaint with

enough factual matter (taken as true) to suggest" that he is entitled to relief.  *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007).

Defendants move for summary judgment on the ground that Mr. Medina failed to exhaust

his administrative remedies under the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C.

§ 1997e(a).  After *Jones v. Bock*, 549 U.S. 199 (2007), a failure to exhaust administrative

remedies constitutes an affirmative defense which must be pled and proved by defendants.

*Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir.2007).

> Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. A dispute is "genuine" if the issue could be resolved in favor of either party. A fact is "material" if it might reasonably affect the outcome of the case.
> A movant who does not have the burden of proof at trial must show the absence of a genuine fact issue. By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense. In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. All the evidence must be viewed in the light most favorable to the party opposing the motion. However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.

*Wausau Business Ins. Co. v. U.S. Motels Management, Inc.*, 341 F.Supp.2d 1180, 1182–83 (D.Colo.2004) (citations omitted).

Because Mr. Medina appears *pro se*, the court reviews his "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  "The Haines rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991) citations omitted).  However, the court cannot be a *pro se* litigant's advocate.  *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as pro se litigant's advocate).  The court should not "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir.1997) (citation omitted).

III.   Analysis

In his remaining claim, Mr. Medina alleges that;

> . . . in 2005, when he was serving a two-year parole sentence for escaping from a mental institution, and in 2013, when he again was serving parole, Defendant Julie David harassed and mentally tortured him in violation of his Eighth Amendment rights. Plaintiff further asserts that Defendant David was offended by Plaintiff's relationship with a "veteran officer," harassed Plaintiff and his wife by making comments about their relationship and making visits to their residence late at night, but then discontinued the harassment after Plaintiff's wife assisted Defendant David with the licensing of her motorcycle at the DMV where she worked. Plaintiff contends that Defendant David felt "exposed" by the Plaintiff's wife helping her, may have feared retaliation, and "backed off."

Then again in 2013, when Plaintiff was released to parole, Defendant David, along with Defendant Genie Cannahan, were the parole officers who transported him from the Denver Rehabilitation and Diagnostic Center. Id. Plaintiff contends that Defendant David shoved him into the vehicle and told Defendant Cannahan that Plaintiff is a narcissistic punk with too much power and connections, and that he is a thug who compromises "cops." Plaintiff further asserts that Defendant Cannahan then intentionally isolated Plaintiff from his support system, by not allowing Plaintiff to attend his brother's funeral service, participate in Christmas celebrations, and to be at the family business. Defendant Cannahan further required Plaintiff to partially disrobe on one occasion. *Id.* Finally Defendants Cannahan and David used their position to terrify him and mentally torture him, resulting in Plaintiff "doing something to jeopardize his parole [sic]."

(*See* "Order to Dismiss in Part and to Draw in Part" (Doc. # 20) (citations omitted)).

A.      Liability of Defendants in their Official Capacities

Mr. Medina does not specify whether he is suing Defendants in their official capacities, their individual capacities, or both.  (*See* Doc. # 15).  To the extent that he is suing them in their official capacities, he is actually attempting to impose liability on their employer, the CDOC.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state).  The CDOC is considered an agency of the State of Colorado.  *See* Colo. Rev. Stat. § 24-1-128.5.  The Eleventh Amendment provides for the sovereign immunity of a state or state actors sued in federal court.  *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *overruled on other grounds by Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007).  "[W]hen a suit seeks money damages against an official of a state agency, suing that official in his or her official capacity, then the real party in interest is the state, and the suit is barred by the Eleventh Amendment."  *Id.*  (internal quotation marks and citation omitted).  The Eleventh Amendment confers total immunity from suit, not merely a defense to liability.  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted).  To the extent that Mr. Medina is suing Defendants in their official capacities for money

damages, such claim is properly dismissed without prejudice for lack of subject matter jurisdiction.

B.    Qualified Immunity

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). To the extent that Mr. Medina is suing Defendants in their individual capacities, personal capacity suits seek to impose personal liability upon government officials for actions they take. *Graham*, 473 U.S. at 165-67. Defendants in their individual capacities raise the defense of qualified immunity. Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*

1.    Claim for Violation of Fourth Amendment Rights

Mr. Medina alleges that Defendant Connaghan violated his Fourth Amendment rights by searching his hotel room and demanding "on one occasion [that] he take his shirt off." (*See* Doc. # 15 at 7 of 9). "A [parolee's] home, like anyone else's, is protected by the Fourth

6

Amendment's requirement that searches be reasonable." *United States v. Warren*, 566 F.3d 1211, 1215 (10th Cir. 2009) (internal quotation marks and citation omitted). "Ordinarily, a search of a home is reasonable only if it is authorized by a judicial warrant, which must be supported by probable cause." *Id.* "But for searches of probationers and parolees and their homes, the Supreme Court has embraced two exceptions to the warrant and probable-cause requirements: (1) a special-needs exception and (2) a totality-of-the-circumstances exception." *Id.* In *Griffin v. Wisconsin*, 483 U.S. 868, 876, 880 (1987), "[t]he Court concluded that the state's special need[ ] to supervise probationers made [a] warrant requirement impracticable and justif[ied] replacement of the standard of probable cause by reasonable grounds" and "upheld the warrantless search because it was conducted pursuant to a valid regulation governing probationers." *Warren*, 566 F.3d at 1216 (internal quotation marks and citations omitted). "A state's parole system presents such special needs." *Chick v. Boulton*, No. 05-cv-0052, 2006 WL 581166, at * 3 (D. Colo. Mar. 7, 2006). [1] "Colorado Revised Statute § 17-2-201(5) governs the conditions of parole in Colorado." *Warren*, 566 F.3d at 1217. "It mandates that each parolee sign a written agreement that contains such parole conditions as deemed appropriate by the [parole] board, which conditions shall include . . . [t]hat the parolee . . . allow the community parole officer to make searches of his or her person, residence, or vehicle." *Id.* (citing § 17-2-201(5)(f)(I)(D) (internal quotation marks omitted)). *See also People v. McCullough*, 6 P.3d 774, 780 (Colo. 2000) ("State of Colorado's operation of its parole system presents the type of 'special needs' that the Supreme Court has recognized as justifying a departure from the usual Fourth Amendment mandates") (*en banc*). Defendants' Motion "can readily be resolved under the special-needs exception recognized in *Griffin*, so [the court] need

---

[1] Copies of unpublished cases cited are attached to this Recommendation.

not decide whether the search could also be affirmed under the totality-of-the-circumstances approach." *Warren*, 566 F.3d at 1217.

"[A] parole officer needs only reasonable suspicion that the parolee has committed or is committing a parole violation or crime." *Chick v. Boulton*, 2006 WL 581166, at * 3. "Reasonable suspicion requires only a particularized and objective basis for suspecting criminal activity, a lower standard than probable cause, which means a fair probability that contraband or evidence of a crime will be found." *United States v. Trujillo*, 404 F.3d 1238, 1244 (10th Cir. 2005) (internal quotation marks and citation omitted). Mr. Medina's own allegations indicate that Defendant Connaghan arrived to search his hotel room because he had been away for more than eighteen hours. (*See* Doc. # 15 at 7 of 9). He alleges that in the course of that search, Defendant Connaghan "demanded he take his shirt off." (*See id.*). He concedes that the search was "to relieve the Plaintiff of what the officer distinctly (in front of her fellow officers) named as contraband, yet she did not take the identified contraband." (*See* Doc. # 46 at 9-10 of 15). The totality of the allegations supports the existence of reasonable suspicion to conduct the warrantless search pursuant to a valid regulation governing parolees. *See Trujillo*, 404 F.3d at 1245 ("Once there was reason to believe that Mr. Trujillo violated his parole agreement, there is, by definition, reasonable suspicion to support a search of his residence to ensure compliance with the conditions of his parole. Accordingly, there was nothing improper about searching Mr. Trujillo's residence.").

Mr. Medina also alleges that Defendant David violated his Fourth Amendment rights when picking him up upon his release from the Diagnostic and Reception Center ("DRDC") of the CDOC by "shoving the Applicant roughly into the awaiting vehicle." (*See* Doc. # 15 at 4-5, 7 of 9). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and "[d]etermining whether

the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation marks and citation omitted).

If Mr. Medina is not alleging excessive force in the context of an arrest, an excessive force claim that arises outside of the context of a law enforcement official's arrest, investigatory stop or other seizure is analyzed under the Due Process Clause of the Fourteenth Amendment. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998) (applying substantive due process standard because "[t]he Fourth Amendment covers only 'searches and seizures,' neither of which took place here"). *See also Piper v. City of Elmira*, 12 F. Supp. 3d 577, 587-88 (W.D.N.Y. 2014) ("Where the claim arises outside the context of an arrest or a seizure by law enforcement officials, allegations of excessive force are analyzed under the Due Process Clause of the Fourteenth Amendment.") (citing *Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir.1998) ("outside the context of an arrest, a plaintiff may make claims of excessive force under § 1983 under the Due Process Clause of the Fourteenth Amendment")); *Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir.1998) ("[p]laintiffs do not assert that they were arrested or seized, and therefore these claims fall outside of the Fourth Amendment protections . . . and are governed instead by the Due Process Clause of the Fourteenth Amendment") (internal citations omitted); *Harrell v. Cnty. of Nassau*, No. 10-CV-5894(MKB), 2013 WL 5439137, *6 (E.D.N.Y. Sept. 27, 2013) ("[s]ince [p]laintiff was not arrested and was not seized, [p]laintiff's excessive force claim is appropriately analyzed under the substantive due process standard"). "[A] Fourteenth Amendment substantive due process approach . . . requires a showing that the amount of force

used was such as to offend even hardened sensibilities or brutal and offensive to human dignity." *Piper*, 12 F. Supp. 3d at 587 (internal quotation marks and citation omitted).

"A complaint that fails to allege an unreasonable excessive use of force may be dismissed for failure to state a claim." *Bowles v. State*, 37 F. Supp. 2d 608, 612 (S.D.N.Y. 1999). Mr. Medina's claim of excessive force concerns one shove. The court determines that the claim is not constitutionally cognizable under either the Fourth Amendment or the Fourteenth Amendment. Accepting as true the allegations in the SAC and drawing all reasonable inferences in favor of Mr. Medina, the court finds that he has not alleged that Defendant David used unreasonable excessive force. *See id.* (In § 1983 action, arrestee failed to state claim of use of excessive force, where arrestee merely alleged that he was pushed and shoved by officer during search incident to arrest) (citing *Roundtree v. City of New York*, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) (court dismissed excessive force claim based only on plaintiff's allegation that he was pushed into a car)); *Mandina v. The City of Yonkers*, No. 97CIV 1087(LAP), 1998 WL 637471, at *9 (S.D.N.Y. Sept. 16, 1998) (granting summary judgment against pro se plaintiff who alleged, inter alia, that during his arrest, defendant police officer used excessive force by pushing and shoving him into a police car). Under a Fourteenth Amendment analysis, Mr. Medina alleges no facts to show that this shove was so egregious as to shock the conscience. *See Piper*, 12 F. Supp. 3d at 594 (citing *Tierney*, 133 F.3d at 199 (remanding case for entry of summary judgment in favor of officers on plaintiff's Fourteenth Amendment excessive force claim where the officers' use of force was de minimis); *Bove v. New York City*, No. 98 CIV 8800(HB), 1999 WL 595620, *6 (S.D.N.Y. Aug. 6, 1999) (summary judgment appropriate where the force used "was at worst, *de minimis*, and insufficient to shock this Court's conscience")).

Mr. Medina states no injury as a result of the alleged excessive force.  The Tenth Circuit has "consistently rejected a bright-line rule requiring plaintiffs to demonstrate physical injury when bringing excessive force claims." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208 (10th Cir. 2008) (citing *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001) (explaining that "[p]hysical injury may be the most obvious injury that flows from the use of excessive force," but "declin[ing] to adopt a 'bright-line' standard dictating that force cannot be 'excessive' unless it leaves visible cuts, bruises, abrasions or scars")).  *See also Piper*, 12 F. Supp. 3d at 589 ("although the absence of any injury, however slight or fleeting is an indication that the force used was *de minimis*, the absence of a serious injury is not dispositive of the claim.") (internal quotation marks and citations omitted).  Nevertheless, alleged injuries reflecting only minimal force may be insufficient to qualify as constitutionally excessive or overcome the officers' entitlement to qualified immunity. *McGovern v. Spokane Police Dep't*, No. CV-08-378-LRS, 2010 WL 1849012, at *2 (E.D. Wash. May 3, 2010) (citing *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) (Police officer's use of force against arrestee was *de minimis*, and thus, officer did not lose his qualified immunity from arrestee's § 1983 claim alleging excessive force; officer grabbed arrestee and shoved him a few feet against a vehicle, pushed his knee into the arrestee's back and pushed arrestee's head against the van, searched arrestee's groin area in an uncomfortable manner, and placed the arrestee in handcuffs).  *See also Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.");  *Cortez v. McCauley*, 478 F.3d 1108, 1145 (10th Cir. 2007) (mere handcuffing without any further allegation of injury is insufficient to state a claim for excessive force);  *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir.1995) (shoving detainee to the floor and handcuffing her was not excessive force as officers entered a bonding establishment to effect the arrest of

the owner);  *Finney v. Metzger*, 175 F. Supp. 2d 1296, 1305 (D. Kan. 2001) ("a reasonable officer would be entitled to believe excessive force was not applied and, therefore, is protected from liability under the qualified immunity doctrine").  As Mr. Medina alleges no physical injury, he fails to state a plausible Fourth Amendment violation for excessive force that is sufficient to overcome the defense of qualified immunity.

2.      Claim for Denial of Association

Mr. Medina alleges that Defendant Connaghan "refused the many good people trying to help him succeed from even being allowed to see him."  (*See* Doc. # 15 at 4 of 9).  The State "has an overwhelming interest in ensuring that a parolee complies" with the conditions of his parole.  *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365 (1998) (internal quotation marks and citation omitted).

. . . The parole system serves a very important function in the correctional process. As the Supreme Court has recognized, parole is designed to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed.  To accomplish the purpose of parole, those who are allowed to leave prison early are subjected to specified conditions for the duration of their terms. These conditions restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen.  The *Griffin* Court noted that [t]hese restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed.

The parole officer plays a unique role in assisting the parolee in his quest to reintegrate into society.  The *Morrissey* Court discussed the role of the parole officer as such:

The parole officers are part of the administrative system designed to assist parolees and to offer them guidance. The conditions of parole serve a dual purpose; they prohibit, either absolutely or conditionally, behavior that is deemed dangerous to the restoration of the individual into normal society. And through the requirement of reporting to the parole officer and seeking guidance and permission before doing many things, the officer is provided with

information about the parole[e] and an opportunity to advise him. The combination puts the parole officer into the position in which he can try to guide the parolee into constructive development.

In order to successfully perform their job and fulfill their role in the correctional system, parole officers must have the ability to effectively supervise their parolees. This supervision is essential to the rehabilitation of the parolee.

In addition to the importance of supervision to the rehabilitation of the parolee, supervision is also vitally important to the State's interest in protecting the community during the parolee's completion of his sentence. We recognized in *Anderson* that parolees, as a class, pose a greater threat of criminal activity to law enforcement authorities than ordinary citizens.  The Supreme Court in *Morrissey* acknowledged that [r]elease of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts. . . . [P]arolees . . . are more likely to commit future criminal offenses than are average citizens. Indeed, this is the very premise behind the system of close parole supervision.

*People v. McCullough*, 6 P.3d 774, 779-80 (Colo. 2000) (internal quotation marks and citations omitted).  A parolee or probationer's right of association "may be restricted to further the goals of parole or probation, as long as the restriction is reasonably related to achieving those goals." *Behlke v. Jordan*, 83 F.3d 424 (7th Cir. 1996).

The court concludes that Mr. Medina's generalized allegations of denial of association are conclusory and do not state a violation of constitutional magnitude.  Mr. Medina alleges that while he was on parole in 2013, he was denied visitation with several members of his family and his ex-wives.  He indicates that he was on parole from December 20, 2012 until February 5, 2013 and again from June 5, 2013 until June 24, 2013, for a total of 66 days.  (*See* Doc. # 46 at 1 of 15).  He does not allege that he was denied all contact with these individuals.  (*See, e.g.*, Doc. # 46 at 7 of 15 ("She instructed the Plaintiff's Mother and Sister they were O.K.ed for supplies drop-offs.")).  He alleges that he was denied access to his brother's grave site and denied access to his "family business w[h]ich is a high class cigar shop." (*See* Doc. # 15 at 5 of

13

9).  He alleges that he could not see his first wife, but was speaking with her "via phone."  (*See id.* at 4 of 9).  Mr. Medina has not identified any relationship of which he was deprived.

Nor has he alleged that Defendants intended to deprive him of any relationship.  Conduct by the State "will work an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right."  *Trujillo v. Board of County Com'rs of Santa Fe County,* 768 F.2d 1186, 1190 (10th Cir. 1985).

> Not every statement or act that results in an interference with the rights of intimate association is actionable. Rather, to rise to the level of a constitutional claim, the defendant must direct his or her statements or conduct at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship.

*Griffin v. Strong*, 983 F.2d 1544, 1548 (10th Cir. 1993) (citing *Trujillo*, 768 F.2d at 1190).  As Mr. Medina has not alleged that Defendants directed any of their conduct to deprive him of a protected relationship, he fails to state a claim to which relief can be granted.  *See id.* (because plaintiffs did not allege intent to deprive them of their protected relationship, "their complaint was properly dismissed for failure to state a constitutional claim").  This claim is properly dismissed for failure to state a claim to which relief can be granted.

As the court concludes that Mr. Medina fails to state any plausible constitutional violation, Defendants in their individual capacities are entitled to qualified immunity.  The court need not reach the "clearly established" prong of qualified immunity to conclude that Mr. Medina's claim fails.  *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

C.     Statute of Limitations

Defendants argue that Mr. Medina's claims based upon incidents that occurred in 2004 or

2005 are barred by the statute of limitations.  Mr. Medina brings his claims pursuant to Title 42

U.S.C. § 1983.  Federal courts must look to the applicable state statute of limitations to

determine the timeliness of a claim under 42 U.S.C. § 1983.  *Blake v. Dickason*, 997 F.2d 749,

750 (10th Cir. 1993).  Colorado law provides a two-year statute of limitations for actions brought

pursuant to § 1983.  *See* Colo.Rev.Stat. § 13–80–102(g) (establishing a two-year limitation

period for "all actions upon liability created by a federal statute where no period of limitation is

provided in said federal statute" and for "all other actions of every kind for which no other period

of limitation is provided");  *Blake v. Dickason*, 997 F.2d at 750 (applying § 13–80–102 to § 1983

claim).  The determination of when a § 1983 action accrues is controlled by federal rather than

state law.  *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (citation omitted).  "Section

1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has

reason to know of the injury which is the basis of his action."  *Johnson v. Johnson County*

*Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir.1991) (internal quotation marks and citation

omitted).

At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-

of-limitations defense only if it appears beyond a doubt that a plaintiff can prove no set of facts

that toll the statute.  *See Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008) (While the

statute of limitations is an affirmative defense, the issue may be resolved on a motion to dismiss

where the application of the limitations period is apparent on the face of the pleading.);  *United*

*States v. Lewis*, 411 F.3d 838, 842 (7th Cir.2005) (complaint may be dismissed where the

"allegations of the complaint itself set forth everything necessary to satisfy the affirmative

defense, such as when a complaint plainly reveals that an action is untimely under the

governing statute of limitations") (citation omitted); *Bullington v. United Air Lines Inc.*, 186 F.3d 1301, 1310 n. 3 (10th Cir.1999) (noting "that Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period") (citation omitted), *implicitly overruled on other grounds as recognized by Boyer v. Cordant Technologies*, 316 F.3d 1137, 1140 (10th Cir.2003); *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir.1980) ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute.").

Mr. Medina alleges that he was subjected to inappropriate late night visits by his parole officer in 2004 or 2005.  (See Doc. # 15 at 4, 7 of 9).  He filed his initial Prisoner Complaint on November 10, 2014.  His own allegations demonstrate and he does not dispute that he initiated this civil action well beyond the expiration of the two-year statute of limitations period for § 1983 claims arising in Colorado.  Mr. Medina argues that Defendant David's "actions which became a continu[ ]ing occur[e]nce both in the 4-2-04 parole, and then in the 12-20-12 parole is an ongoing negative situation, and as such, cannot be 'timebarred' because although beginning in 2005 occ[ ]urences did not actually end until[ ] 6-24-14." (*See* Doc. # 46 at 5 of 15).  The Tenth Circuit Court of Appeals has held "[t]he continuing violation doctrine permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).  "Under this doctrine, a plaintiff may avoid the statute of limitations when the defendant has acted pursuant to a pattern or longstanding policy or practice of constitutional violations." *Mercer-Smith v. New Mexico Children, Youth and Families Dep't*, No. 10-2053, 416 F. App'x 704, 712 (10th Cir. Mar. 21, 2011).  However, "the

doctrine of continuing violations does not apply to § 1983 claims." *Mercer-Smith*, 416 F. App'x at 712 (citations omitted).  *See also Canfield v. Douglas Cty.*, No. 15-1014, 619 F. App'x 774, 778 (10th Cir. Sept. 29, 2015)  (The Tenth Circuit "has never held that the continuing-violation doctrine applies to § 1983 cases.");  *Cruz v. Raemisch*, No. 14-cv-03021-WYD-KMT, 2015 WL 2148708, at * 3 (D. Colo. May 6, 2015) ("While Plaintiff relies on the continuing violations doctrine, the Tenth Circuit has stated that this doctrine does not apply to § 1983 claims.") (citation omitted);  *Allen v. Falk*, No. 14-cv-01176-RBJ-MJW, 2015 WL 156777, at * 6 (D. Colo. Jan. 12, 2015) (same) (citations omitted);  *Vaughan v. Ellis County*, No. 13-2283-CM, 2014 WL 910125, at * 3 n.2 (D. Kan. Mar. 10, 2014) (same) (citation omitted).

Even if a continuing violation exception could be applied to claims under Section 1983, it would not save Mr. Medina's claims.  "The continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Martin v. Nannie & The Newborns, Inc.*, 3 F.3d 1410, 1415, n. 6 (10th Cir. 1993), *overruled on other grounds by Davidson v. Am Online, Inc.*, 337 F.3d 1179 (10th Cir. 2003).  Because "the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir.1998) (internal quotations and citation omitted).  "[I]f an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the statutory requirement of filing a charge with the EEOC with respect to that event or series of events." *Martin*, 3 F.3d at 1415, n. 6.  *See also Vaughan*, 2014 WL 910125, at * 3 n.2 (D. Kan. Mar. 10, 2014) (claim accrued when plaintiff knew or should have known his rights were violated"); *Matthews v. Rice*, No. 11-3221-RDR, 2013 WL 5276128, at * 2 (D. Kan.

Sept. 18, 2013) (same).  Mr. Medina's own allegations demonstrate that he would have been aware that Defendants' actions during the period of parole in 2004 or 2005 were, in his view, improper.  (*See* Doc. # 15 at 4, 7 of 9).  Thus, the continuing violation would not be applicable to Mr. Medina's claims based upon Defendants' conduct in 2004 or 2005.  *See Muhammad v. Court of Common Pleas of Allegheny County, Pa.*, No. 11-3669, 483 F. App'x 759, 762 (3d. Cir. May 11, 2012) (continuing violation doctrine does not apply where "plaintiffs are aware of the injury at the time it occurred");  *Wood v. Milyard*, No. 10-1169, 414 F. App'x 103, 106 (Jan. 13, 2011) ("Through the exercise of reasonable diligence, Plaintiff would have been aware at the outset" that Defendants' actions were retaliatory.).  Mr. Medina's claims based upon conduct that occurred in 2004 or 2005 are barred by the statute of limitations.

D.    Exhaustion of Administrative Remedies

Defendants argue that Mr. Medina failed to exhaust his prerequisite administrative remedies under the PLRA.  The PLRA provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).  The "PLRA's exhaustion requirement applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  *See also Booth v. Churner*, 532 U.S. 731, 731–32 (2001) (PLRA requires exhaustion in all matters regardless of remedy sought and availability of remedy at the agency level).

The PLRA's requirement that an inmate exhaust all available administrative remedies before initiating suit is mandatory.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").  *See also Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003) (finding that the exhaustion

requirement "is mandatory, and the district court [is] not authorized to dispense with it."). "Since the PLRA makes exhaustion a precondition to filing a suit, an action brought before administrative remedies are exhausted must be dismissed." *Ruppert v. Aragon*, No. 11-2144, 448 F. App'x 862, 863 (10th Cir. Feb. 9, 2012) (citing 42 U.S.C. § 1997e(a)). *See also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Fitzgerald v. Corrections Corp. of Am.*, 403 F.3d 1134, 1140-41 (10th Cir. 2005) (The PLRA requires exhaustion as a "precondition" to bringing litigation and requires dismissal where a litigant has failed to complete exhaustion before initiating a suit), *overruled on other grounds by Porter v. Nussle*, 534 U.S. at 516.

"To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules,—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (internal quotation marks and citation omitted). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

Mr. Medina acknowledges that he has not exhausted his available administrative remedies "because incident happened on parole, not in a facility." (*See* Doc. # 15 at 8 of 9, Doc. # 46 at 3 of 15). First, Defendants submit with their Motion the Affidavit of Anthony DeCesaro, a Step 3 Grievance Officer for the CDOC. (See Exhibit A–1 to Defendants' Motion (Doc. # 36-1) at 1-4 of 22). Mr. DeCesaro attests that CDOC Administrative Regulation ("AR") 850–04 provides that the grievance procedure is available to "offenders sentenced to the CDOC," including "offenders who have been released to parole." (*See* Doc. # 36-1 at 2 of 22, ¶

19

5, AR 850–04 Section IV.A.2. (Doc. # 36-1 at 6 of 22).   Pursuant to the prison grievance

process, AR 850–04 applies to parolees.   *See Blevins v. Wells*, No. 09-cv-01531-WJM-KMT,

2011 WL 1518656, at * 3 (D. Colo. Mar. 14, 2011) ("AR 850-04 applies to Plaintiff whether he

was a parolee or back in CDOC custody."), *report and recommendation adopted*, No. 09-cv-

01531-WJM-KMT, 2011 WL 1518655 (D. Colo. Apr. 20, 2011).   *But see Calia v. Werholtz*, 408

F. Supp. 2d 1148, 1151 (D. Kan. 2005) (plaintiff on parole was not a prisoner under the plain

meaning of the PLRA at the time he filed his § 1983 claim and is therefore not barred by the

PLRA's exhaustion requirement from bringing his claim).   Second, Mr. Medina was sentenced to

the CDOC on June 19, 2014 in the Jefferson County District Court in *People v. Medina*,

2013CR2027 and arrived at SCF on or about August 25, 2014.   (*See* Offender Profile, Exhibit A-

6 to Reply (Doc. # 51-4 at 1 of 4, Colorado State Courts – Data Access,

www.jbits.courts.state.co.us).   He filed his initial Prisoner Complaint on November 10, 2014,

several months after he had been incarcerated at SCF.   (*See* Doc. # 10).   The court concludes

that Mr. Medina has not met his burden of showing on summary judgment that he was not

required to exhaust his available administrative remedies because the incident happened while

he was on parole.

Mr. Medina next argues that the PLRA's exhaustion requirement should be waived

because he was ignorant of the law and did not have physical access to the facility law library.

(*See* Doc. # at 3-4 of 15).   In order to overcome his failure to exhaust, he must demonstrate that

administrative remedies were unavailable.   *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir.

2011).   A remedy is unavailable when prison officials hinder, thwart, or prevent an inmate's

attempts to exhaust that remedy.   *Id.* at 1252.

Mr. Medina does not allege that he was prevented, thwarted, or otherwise deterred from

filing a grievance.   First, his argument that he was unaware of the PLRA's mandatory

exhaustion requirement did not render administrative remedies unavailable to him.  *See Simmons v. Stus*, No. 10-3070, 401 F. App'x 380, 381 (10th Cir. Nov. 9, 2010) (" 'even accepting plaintiff's allegation that he was unaware of the grievance procedures, there is no authority for waiving or excusing compliance with PLRA's exhaustion requirement' ") (quoting *Gonzales-Liranza v. Naranjo*, No. 02-2110, 76 F. App'x 270, 272–73 (10th Cir. Oct. 2, 2003) (concluding that the district court did not err in rejecting prisoner's claim that his unawareness of the grievance procedure excused the PLRA's exhaustion requirement)).  *See also Napier v. Laurel Cnty.*, 636 F.3d 218, 221–22 n. 2 (6th Cir.2011) ("A plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy.") (citation omitted);  *Africa v. Dukes*, No. 1:10-1838, 2012 WL 1313412, at * 1 (M.D. Pa. April 17, 2012) ("Ignorance of the law, however, is not excuse.").  Second, Mr. Medina's familiarity with the grievance process is demonstrated by his previous filing of two Step 1 grievances.  (*See* Grievance Log, Exhibit A-5 to Reply (Doc. # 51-3 at 1-2 of 2).

Mr. Medina also argues that he was not required to comply with the PLRA's exhaustion requirement because he did not have physical access to the facility's law library.  First, while "[i]t is now established beyond doubt that prisoners have a constitutional right of access to the courts," nonetheless "physical access to a prison law library is not a right."  *Yahweh v. Zavaras*, No. 95-1515, 104 F.3d 368, at * 1 (10th Cir. Dec. 23, 1996) (citations omitted).  The United States Constitution "does not guarantee prisoners an abstract, freestanding right to a law library or legal assistance, but rather a right of access to the courts."  *Mayes v. Province*, No. 10-6021, 376 F. App'x 815, 816 (10th Cir. Apr. 23, 2010) (internal quotation marks and citation omitted).  "The right of access to the courts may be satisfied by alternative means that allow a prisoner a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  *Yahweh*, 104 F.3d at *1 (internal quotation marks and citation omitted).

*See also United States v. Taylor*, 183 F.3d 1199, 1204 (10th Cir.1999) ("while prisoners . . . have a right to adequate, effective and meaningful access to the courts, access to a law library is only one of many constitutionally acceptable methods used to assure meaningful access to the courts.").

Although Mr. Medina's physical access to the SCF law library was limited, he was afforded an alternative means by which to access the law library and its resources through the Legal Access Program.  (*See* Affidavit of Michael Storer, Exhibit A-4 to Reply, ¶¶ 1-18 (Doc. # 51-2 at 1-5 of 30), AR 750-01, Attachment 1 to Affidavit of Michael Storer (Doc. # 51-2 at 6-24 of 30)).  In September and October of 2014, prior to the filing of his original Prisoner Complaint, Mr. Medina had 17 recorded interactions with law library staff, by which he requested and received legal assistance, legal materials, and court filing forms.  (*See id.* at ¶¶ 13-16, Statistics for Photocopies and Printed Materials, Attachments 2 and 3 to Affidavit of Michael Storer (Doc. # 51-2 at 25, 30 of 30)).

In sum, Mr. Medina has not met his burden on summary judgment of showing that he was excused from the requirement to exhaust his administrative remedies due to his ignorance of the law or because he did not have physical access to the prison law library.  Mr. Medina's claims are properly dismissed for failure to exhaust the prerequisite administrative remedies.

E.      Mr. Medina's "Motion of Appeal . . ."

Mr. Medina asks the court to "withdraw[ ] [the] dismissals of the (1) Denver Parole Office as a named Defendant, (2) and the claims addressed," that is, to reconsider the court's "Order to Dismiss in Part and to Draw in Part" (Doc. # 20).[2]  "Grounds warranting a motion to

---

[2] He does not dispute the dismissal of Claim Two.  (*See* Doc. # 27 at 4 of 7).

reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citations omitted).  "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.*  "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."  *Id.*  The court concludes that none of these grounds is supported by Mr. Medina's Motion.


Accordingly, IT IS ORDERED that:

1.      Defendants' "Motion to Dismiss or Alternatively for Summary Judgment" (filed May 18, 2015) (Doc. # 36) is GRANTED and this civil action is dismissed for lack of subject matter jurisdiction over Plaintiff's claim for money damages against Defendants in their official capacities and for failure to state a claim to which relief can be granted.

2.      Mr. Medina's "Motion of Appeal of [A]cceptance Re: 42 U.S.C. § 1983 Civil Complaint [sic]" (filed April 6, 2015) (Doc. # 27) wherein he seeks reconsideration of the court's "Order to Dismiss in Part and to Draw in Part" dated March 16, 2015 (Doc. # 20) is DENIED.

DATED at Denver, Colorado this 8th day of January, 2016.

BY THE COURT:


        s/Craig B. Shaffer
United States Magistrate Judge